874 P.2d 785

In the MATTER OF Michael M. ROME-RO, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.

No. 21940.

Supreme Court of New Mexico.

May 10, 1994.

Virginia L. Ferrara, Chief Disciplinary Counsel, Albuquerque, for Disciplinary Bd.

Michael M. Romero, pro se.

## OPINION

PER CURIAM.

This matter is before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 through 17–316 (Repl. Pamp.1991 and Cum.Supp.1993), wherein the disciplinary board recommended that attorney Michael M. Romero be suspended indefinitely from the practice of law with application for reinstatement contingent upon certain preconditions. We adopt the board's recommendation in its entirety.

A specification of charges was filed against Romero on June 11, 1993. We note that the charges were preceded by two letters, one telephone call, and two facsimile transmissions from disciplinary counsel requesting a response to the complaint filed against him by his former client Irma Angel (Gibson) Vorhauer. Rule 17–307(B) requires that a formal hearing be conducted to resolve any doubts regarding whether an attorney may be guilty of misconduct. When an attorney refuses to address allegations of misconduct despite requests for information from disciplinary counsel, that attorney not only violates SCRA 1986, 16–801(B) and 16–803(D) of the Rules of Professional Conduct, but also ensures that he or she will become the subject of formal disciplinary proceedings regarding the underlying complaint.

On July 7, 1993, Romero was served with a copy of the specification of charges; however, he filed no answer to the charges, and, thus, the charges were deemed admitted. See SCRA 1986, 17–310(C); In re Roberts–Hohl, 116 N.M. 700, 866 P.2d 1167 (1994). Despite receiving notice, Romero failed to appear at the hearing held in Carlsbad, New Mexico, on September 13, 1993, and made no request to the disciplinary board for a review of the hearing committee's recommendation that he be suspended from the practice of law. Although provided with a copy of the disciplinary board's decision and notified of a hearing in this Court regarding the board's recommendation to suspend Romero's license to practice law, he again failed to appear.

The charges as deemed admitted are as follows: In May of 1992, Irma Angel Gibson (hereinafter "Gibson"), d/b/a Mystic Homes, retained Romero to represent her in efforts to collect approximately $38,000 she claimed to be owed by persons for whom she had done a home renovation project. Gibson previously filed a lien against the property and requested that Romero proceed with an action in foreclosure, which he agreed to do within thirty days. He wrote a demand letter to the owners' attorney setting forth Gibson's demands, advised that appropriate legal action would be taken within ten (10) days if the demands were not met, and provided to Gibson a copy of the letter.

Opposing counsel replied within the ten-day period set by Romero, requested documentation of Gibson's claimed charges, and advised that his clients had complained against Gibson to the Construction Industries Division and would be suing her for what they viewed as shoddy workmanship. When a month passed with no word from Romero, opposing counsel wrote to him again, enclosing a copy of the report of the Construction Industries Division and demanding that Gibson release her lien against his clients' property. Romero responded with an offer to settle Gibson's claim for approximately $30,000 and offered to accept service for her in the event a lawsuit was filed.

Romero never filed a foreclosure action, but on August 10, 1992, he accepted service of a complaint, summons, requests for production, and interrogatories for Gibson in the case *Thiel v. Erma (sic.) Angel Gibson et al.,* cause numbered CV–92–747 before the District Court for the Third Judicial District of New Mexico.

On August 8, 1992, Gibson married, moved to the state of Washington, and changed her name to Irma Angel Vorhauer (hereinafter "Vorhauer.") She advised Romero's office of her new name, address, and phone number and unsuccessfully attempted to reach him by phone on several occasions during August and September 1992.

Romero never advised Vorhauer that a lawsuit had been filed against her. He mailed her copies of the requests for production and interrogatories, but being unfamiliar with the law she assumed they were somehow associated with the negotiations she believed Romero to be conducting with respect to her lien enforcement. Vorhauer provided to Romero her answers to "the questions" and advised him that the requested documents were in the possession of the Thiels rather than with her.

In September 1992, Romero wrote Vorhauer to advise that she would at some point need to appear for a deposition. Since he still failed to inform her that a lawsuit had been filed, Vorhauer remained under the impression that the deposition was somehow associated with the lien negotiations. She informed Romero that she would appear in New Mexico whenever it was necessary but reminded him that she would prefer not to come to Las Cruces (for reasons known to Romero but unassociated with her dispute with the Thiels).

On September 15, 1992, Romero called opposing counsel to request additional time within which to file an answer to the Thiel complaint against Vorhauer; it was agreed that Romero could have until September 21 to file the answer. When no answer was filed by September 30, opposing counsel filed a Notice of Application for Default Judgment and, on October 8, filed an Application for Default Judgment at 3:07 P.M. Romero filed Vorhauer's answer and counterclaim on October 8 at 4:40 P.M.

Opposing counsel ascertained from Romero that October 29, 1992, would be an appropriate date to schedule Vorhauer's deposition, although Romero had not discussed this date with his client. The deposition date was confirmed in an October 16 letter to Romero, wherein Romero was asked to provide the previously requested documents and answers to interrogatories. Romero never advised opposing counsel that he had received the answers in September or that his client preferred to have her deposition taken somewhere other than Las Cruces. He failed to provide Vorhauer with a copy of the notice of deposition or inform her that a deposition had been scheduled; as a consequence, she did not appear.

On November 4, 1992, Romero agreed on behalf of Vorhauer to release her lien against the Thiel property, although he had not consulted with his client or obtained her permission to release the lien. An amended notice of deposition directing Vorhauer to appear in Las Cruces on November 12 was served on Romero on November 5, 1992. Vorhauer was not notified of this deposition until November 10 and requested a postponement. She provided Romero with a copy of a letter from her treating psychologist to the effect that she should not be required to appear in Las Cruces. The deposition was rescheduled for November 19, 1992.

On November 12, 1992, the court ruled that Vorhauer must respond to the interrogatories and requests for production on or before November 25 and appear for a deposition by December 4 or suffer a default and a dismissal of her counterclaim. The court also assessed $4,342.87 against her in costs and attorney fees. Romero failed to inform Vorhauer of the hearing and the court's ruling, and she remained unaware of the lawsuit pending against her.

On November 17, 1992, the November 19 deposition was rescheduled for November 24 and another notice served upon Romero. Vorhauer was advised of this new date on November 21 by Romero's secretary and responded that it was financially and practically impossible for her to schedule a flight from Washington to Las Cruces on such short notice on Thanksgiving weekend. Romero failed to respond to Vorhauer's message and Vorhauer did not appear for the scheduled deposition.

At a hearing on December 2, 1992, Romero tendered to the court the copy of the November 10 letter from Vorhauer's psychologist by way of explanation for her failures to appear at the scheduled depositions. Because the document was not sworn, the tender was refused. The court deemed Vorhauer's answer stricken, dismissed her counterclaim, and entered a default judgment for the Thiels in the amount of $130,194.69. Vorhauer was never advised of the judgment and inadvertently learned of it and of the fact she had even been sued from a third person sometime in January 1993.

Because of his actions and lack of action, Romero has failed to provide competent representation to a client in violation of Rule 16–101 of the Rules of Professional Conduct; failed to consult with a client as to the means by which her objectives were to be pursued and abide by her decisions in violation of Rule 16–102(A) of the Rules of Professional Conduct; failed to act with diligence and promptness in representing a client in violation of Rule 16–103 of the Rules of Professional Conduct; failed to make reasonable efforts to expedite litigation consistent with his client's interests in violation of Rule 16–302 of the Rules of Professional Conduct;

engaged in conduct prejudicial to the administration of justice in violation of Rule 16–804(D) of the Rules of Professional Conduct; and engaged in conduct which adversely reflects on his fitness to practice law in violation of Rule 16–804(H) of the Rules of Professional Conduct.

As noted above, Romero has consistently failed to offer any excuse or explanation for his conduct in this case. Consequently, it is not known whether the ineptitude he demonstrated during the course of his representation of Vorhauer was the result of intentional neglect, a failure to manage his practice effectively, incompetence, personal or emotional problems, or some deficiency that supervision or other type of assistance might effectively address. Under the circumstances, we see no alternative to suspension. When there is some explanation forthcoming from Romero, we will be in a better position to ascertain whether less stringent measures exist that could adequately protect the public.

IT IS THEREFORE ORDERED that Michael M. Romero be and hereby is suspended indefinitely from the practice of law effective March 23, 1994, pursuant to Rule 17–206(A)(3) of the Rules Governing Discipline. Reinstatement will occur only after proceedings conducted pursuant to Rule 17–214(B)(2). Any application for reinstatement must be accompanied by a written explanation from Romero regarding his conduct during his representation of Vorhauer and the disciplinary investigation and a showing that he has taken and passed the Multistate Professional Responsibility Examination and reimbursed the disciplinary board its costs in bringing this action. Romero may file a petition for reinstatement prior to passing the Multistate Professional Responsibility Examination, but reinstatement, if granted, shall not occur until Romero has passed the Multistate Professional Responsibility Examination and otherwise has complied with Rule 17–214(B)(2) and the other conditions of his suspension.

IT IS FURTHER ORDERED that Stephen Bridgeforth be appointed pursuant to Rule 17–213(A) to inventory Romero's open files and to take such action as seems indicat-

ed to protect the interests of Romero's clients and Romero himself, including but not limited to returning client files, obtaining brief continuances until new counsel can be found, refunding any portion of fees paid in advance that are unearned, and collecting any earned fees that remain unpaid.

· IT IS FURTHER ORDERED that this opinion be published in the *Bar Bulletin* and *New Mexico Reports.*

Costs in the amount of $569.06 are assessed against Romero and must be paid on or before May 1, 1994. Any amounts unpaid by that date will bear interest thereafter at the rate of fifteen percent (15%) per annum until paid in full.

IT IS SO ORDERED.